IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HOWLINK GLOBAL LLC, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 2:22-CV-00040-JRG-RSP |
| § | (LEAD CASE) |
| AT&T, INC, ET AL., § | |
| § | |
| *Defendants.* § | |

### REPORT AND RECOMMENDATION

Before the Court is Defendants'[1] Motion for Summary Judgment No. 1: Non-infringement Due to Application of the *Festo* Bar (**Dkt. No. 165**). For the following reasons, the motion should be **GRANTED**.

**I.   BACKGROUND**

On February 3, 2022, Howlink filed suit against Defendants alleging that they infringe U.S. Patent Nos. 8,630,279 (the "'279 Patent"), RE46,415 (the "'415 Patent"), and 9,596,576 (the "'576 Patent"). Since filing this suit, Howlink has decided it no longer asserts the '415 Patent,[2] and the '576 Patent.[3] Now, Howlink only asserts claims 1–18 and 25 of the '279 Patent ("The Asserted Patent"). Dr. Sharony Infringement Report, Dkt. No. 165-1 at § IV (Summary of Opinions).

---

[1] AT&T Corp., AT&T Communications LLC, AT&T Mobility LLC, and AT&T Services, Inc., Cellco Partnership d/b/a Verizon Wireless, Verizon Services Corp., Verizon Enterprises Solutions, LLC, Verizon Business Global LLC, Verizon Business Network Services LLC, Verizon Corporate Services Group, Inc., Verizon Data Services LLC, Verizon Media Inc., and Verizon Online LLC, Nokia of America Corporation, and Ericsson, Inc. (collectively, "Defendants")

[2] Howlink's Notice, Dkt. No. 139 at 1 ("Plaintiff no will no longer pursue its claims for infringement of US Patent No. RE46,415").

[3] Howlink's Notice, Dkt. No. 118 at 1 ("Plaintiff will no longer pursue its claims for infringement of US Patent No. 9,595,576").

The '279 Patent generally relates to mobile communication systems. '279 Patent, Dkt. No. 108-2 at 1:9–12. According to Howlink, the '279 Patent is generally directed to enabling communications between cell towers and user equipment, such as a cellular device. The '279 Patent explains that "the technical object of the present invention is to provide a method of searching a cell through rapid synchronization acquisition and a method for generating a downlink signal enabling the rapid synchronization acquisition." *Id.* at 2:5–8.

Cellular networks are made up of multiple land areas or "cells," each of which includes a cell tower for coverage of that area. To facilitate the synchronization process, each "cell" can be identified by a unique cell identification code group that is formed by combining cell identification codes. Relevant to the instant dispute is how the cell identification codes are combined into cell identification code groups. During prosecution, the Applicant amended two limitations, replacing "combination" with "concatenation" to overcome a rejection.

At claim construction, the Court construed that the term "formed by a concatenation of," recited in every independent claim of the '279 Patent, to mean "formed by sequentially linking in a series or chain." Claim Construction Order, Dkt. No. 143 at 16. Howlink had argued that the term "concatenation" used in the claims includes both (1) the common "serial concatenation" and (2) a lesser known "parallel" or "interleaved" concatenation, also referred to as "interleaving." *Markman* Hrg. Tr. Feb. 23, 2023, Dkt. No. 137 at 5:15–7:8; *see id*. at 17:11–13. Defendants asserted that "concatenation" and "interleaving" were two separate terms of art. *Id.* at 27:12–22. Notably, Howlink presented evidence and argued that "interleaved concatenation' pre-existed the '279 Patent." *Id.* at 11:2–4. Yet, Howlink conceded that the specification of the '279 Patent does not include any embodiment showing "interleaving concatenation." *Id.* at 17:19–23. In its construction, the Court explicitly stated that "concatenation," as recited in the claims, does

2

*not* include the concept of "parallel" or "interleaved" concatenation. Claim Construction Order, Dkt. No. 143 at 15 (emphasis added).

Now, Howlink's infringement expert, Dr. Jacob Sharony, opines that the limitations at issue—particularly the phrases "formed by a concatenation of"—are only met under the doctrine of equivalents. Dr. Sharony Infringement Report, Dkt. No. 165-1 at ¶253 (analyzing infringement of the limitations in question as to Verizon), ¶ 444 (analyzing infringement of the elements in question as to AT&T). Specifically, Dr. Sharony opines that "*concatenation is equivalent to interleaving* under the doctrine of equivalence [sic]." *Id.* at ¶253 (emphasis added).

### A. The '279 Patent

The '279 Patent issued from U.S. Application No. 12/160,719 (the "'719 Application") on January 14, 2014 with 25 total claims—five independent claims and 20 dependent claims. '279 Patent, Dkt. No. 108-2 at Cover. Claim 1 of the '279 Patent, previously claim 28 of the '719 Application, recites:

> 1. A method for generating a downlink signal, comprising:
> generating a plurality of unique cell identification code groups; and
> allocating the plurality of unique cell identification code groups to a plurality of synchronization durations within a downlink frame, respectively,
> *wherein a first code group of the plurality of unique cell identification code groups is formed by a concatenation of a first cell identification code and a second cell identification code,*
> *wherein a second code group of the plurality of unique cell identification code groups is formed by a concatenation of the second cell identification code and the first cell identification code,*
> wherein the first code group is different from the second code group, and wherein a concatenation of the first cell identification code and the second cell identification code represents cell identification information.

*Id.* at 18:10–27. The two italicized "wherein" limitations above (the "Disputed Limitations") are identical in each of the five independent claims—claims 1, 7, 13, 19, and 25. The focus of this dispute involves the Disputed Limitations.

3

### B. Prosecution History

The '719 Application was filed on July 11, 2008 and is a national phase entry of International Application No. PCT/KR2007/002615, filed May 30, 2007, which claims the benefit of Korean Application No. 10-2006-0136322, filed December 28, 2006. '279 Patent, Dkt. No. 108-2 at Cover. Early in prosecution, the claims required "generating a unique cell identification code group formed *by a combination of* a first cell identification code and a second cell identification code." Prosecution History (Preliminary Amendment, Jul. 11, 2008), Dkt. No. 165-5 at 4. Following an October 20, 2011 amendment, claim 8[4] recited:

> 8. A method for a base station to generating a downlink signal, comprising:
> generating a plurality of unique cell identification code groups; and
> allocating the plurality of unique cell identification code groups to a plurality of synchronization durations within a downlink frame, respectively,
> *wherein one code group of the plurality of unique cell identification code groups is formed by a combination of a first cell identification code and a second cell identification code,*
> *wherein another code group of the plurality of unique cell identification code groups is formed by a combination of a third cell identification code and a fourth cell identification code,*
> wherein the one code group is different from the another code group,
> wherein a combination of the first cell identification code and the second cell identification code represents cell identification information, and
> wherein a combination of the third cell identification code and the fourth cell identification code represents the same cell identification information as cell identification information represented by the combination of the first cell identification code and the second cell identification code.

*See id.* (Amendment Response, June 20, 2011) at 25 (emphasis added). On January 17, 2012, the Examiner rejected the claims under 35 U.S.C. § 103 as being obvious over U.S. Patent No. 5,930,366 ("Jamal"), citing 6:58–7:8 as teaching the limitations reciting unique cell identification code groups "formed by a combination" of the recited cell identification codes. Prosecution History (Final Rejection, Jan. 17, 2012), Dkt. No. 165-6 at 6. In its proposed

---

[4] Claim 8 was later rewritten as new claim 28 that ultimately issued as claim 1 of the '279 Patent. Applicant similarly rewrote the other independent claims.

4

amendment response to the final rejection, the Applicant canceled the pending claims and added new claims 28–52. *Id.* (Proposed Amendment Response, Apr. 17, 2012) at 24. New claim 28 recited:

> 28. (New) A method for generating a downlink signal, comprising:
> generating a plurality of unique cell identification code groups; and
> allocating the plurality of unique cell identification code groups to a plurality of synchronization durations within a downlink frame, respectively,
> wherein **a first code group of the plurality of unique cell identification code groups is formed by a concatenation of a first cell identification code and a second cell identification code**,
> wherein **a second code group of the plurality of unique cell identification code groups is formed by a concatenation of the second cell identification code and the first cell identification code**,
> wherein **the first code group is different from the second code group**,
> wherein a concatenation of the first cell identification code and the second cell identification code represents cell identification information.

*Id.* at 18 (bold representing language emphasized by Applicant in its argument overcoming Jamal).

Among other changes, the Applicant amended (1) the "first code group" limitation to recite "a *concatenation*" rather than "a combination" of a first cell identification code and a second cell identification code;" and (2) the "second code group" limitation to recite "a *concatenation* of the *second* cell identification code and the *first* cell identification code" rather than "a combination of a *third* cell identification code and *fourth* cell identification code." *Id.* (emphasis added).

In the remarks section, as shown in claim 28 above, the Applicant bolded the "first" and "second" code group limitations formed by concatenation and argued, "Jamal merely discloses the combined code $c_{s/lci}$ where framing synchronization information and long code indicating (lci) information are combined, but does not teach the concatenation of two cell identification

5

codes, *i.e., the combination of two cell identification codes*." *Id.* at 24–25 (underlining in original) (emphasis added in italics).

On April 30, 2012, the Examiner refused to enter the amendment and issued an Advisory Action, stating that the new claims recite "concatenation" of identification codes, which was not previously claimed. *Id.* at 30–31. The Examiner specifically stated "concatenation" is not supported by the specification and "*cannot be interpreted as mere combination when concatenation specifically means to connect or link in series or chain*." *Id.* at 31 (emphasis added). In other words, the Examiner explicitly stated that "concatenation" means "serial concatenation."

On May 16, 2012, the Applicant filed an amendment response accompanying a request for continued examination ("RCE") that included the same new claims proposed in response to the final rejection. *Id.* (RCE Amendment, May 16, 2012) at 41. In the remarks section, the Applicant omitted the phrase "i.e., the combination of two cell identification codes" following "concatenation of two cell identification codes." *Id.* at 41 ("Jamal merely discloses the combined code $c_{s/lci}$ where framing synchronization information and long code indicating (lci) information are combined, but does not teach the concatenation of two cell identification codes.") (underlining in original). The Applicant also argued that the original disclosure supports the "concatenation" amendment:

> [A] person having ordinary skill in the art would appreciate that the description of the unique cell identification code group (m,k) in the Specification corresponds to a concatenation of a first cell identification code (m) and a second cell identification code (k), and that the description of the unique cell identification code group (k,m) corresponds to a concatenation of the second cell identification code (k) and the first cell identification code (m). … For at least this reason, Applicant believes the original disclosure provides adequate support for the term "concatenation" and, more specifically, for the concept of concatenating two cell identification codes.

6

> In addition, many of the figures in the original disclosure also provide support for the concept of concatenating two cell identification codes. … For example, Figure 3 shows the elements of a first unique cell identification code C(p) spaced across a first set of channel band symbols in a synchronization duration, and the elements of a second unique cell identification code C(q) spaced across a second set of channel band symbols in the synchronization duration. As illustrated, the last element of the first unique cell identification code C(p) is positioned adjacent to the first element of the second unique cell identification code C(q). Accordingly, a person having ordinary skill in the art would appreciate that the first unique cell identification code C(p) shown in Figure 3 is concatenated with the second unique cell identification code C(q). … For at least this additional reason, Applicant believes the original disclosure provides adequate support for the term "concatenation" and, more specifically, for the concept of concatenating two cell identification codes.

*Id.* at 41–42. The Examiner then issued a notice of allowance.

## II.   LAW

### A.  Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (citing *Liberty Lobby*, 477 U.S. at 247).

"[A] grant of summary judgment of noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent."

*Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016) (citing *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) and *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 39 n.8 (1997)).

### B. Prosecution History Estoppel

Ordinarily, the doctrine of equivalents allows a patentee to claim not only subject matter literally delineated by the claims, but also insubstantial alterations to the claims as written. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002) ("*Festo VIII*"). Importantly, "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29. "The doctrine of equivalents is premised on language's inability to capture the essence of innovation." *Festo VIII*, 535 U.S. at 734. But that premise is unsound if a patent's prosecution history shows that the patentee "turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter." *Id.* at 734–35.

"Prosecution history estoppel is a 'rule of patent construction' that ensures that claims are interpreted by reference to those 'that have been cancelled or rejected.'" *Festo VIII* at 733 (quoting *Schriber–Schroth Co. v. Cleveland Trust Co.,* 311 U.S. 211, 220–221 (1940)). It "bars recapture of subject matter surrendered during prosecution." *Hilgraeve Corp. v. McAffee Assocs., Inc.*, 224 F.3d 1349, 1355 (Fed. Cir. 2000).

"Prosecution history estoppel arises when a patent applicant narrows the scope of his claims during prosecution for a reason 'substantial[ly] relating to patentability.'" *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366–67 (Fed. Cir. 2003) (en banc) ("*Festo IX*")). A narrowing amendment substantially relates to patentability if it was made "to avoid the prior art,

8

or otherwise to address a specific concern—such as obviousness—that arguably would have rendered the claimed subject matter unpatentable." *Warner-Jenkinson*, 520 U.S. at 30–33. "Such a narrowing amendment is presumed to be a surrender of all equivalents within 'the territory between the original claim and the amended claim.'" *Eli Lilly*, 933 F.3d at 1330 (quoting *Festo VIII*, 535 U.S. at 740–41). In other words, when "the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Festo VIII*, 535 U.S. at 733–34. Similarly, after making such an amendment, "the patentee cannot assert that he lacked the words to describe the subject matter in question." *Id.* at 734.

The Federal Circuit explained that the *Warner-Jenkinson* and *Festo VIII* presumptions operate together to establish a three-part test to determine whether prosecution history estoppel bars the doctrine of equivalents. *Festo IX*, 344 F.3d at 1367. First, determine whether the amendment filed in the Patent and Trademark Office narrows the literal scope of the claim. *Id.* Second, if the amendment was narrowing, determine whether the purpose of the amendment was a substantial one relating to patentability. *Id.* Third, if an amendment is both narrowing and affects patentability, therefore giving rise to the Festo presumption of total surrender, determine whether the amendment surrendered the particular equivalent in question. *Id.*

The patentee bears the burden to rebut the *Festo* presumption "by demonstrating that it did not surrender the particular equivalent in question." *Festo IX*, 344 F.3d at 1367. The Supreme Court enumerated three ways to rebut the presumption: (1) establish the equivalent was unforeseeable at the time of the application; (2) demonstrate the amendment bears no more than a tangential relation to the equivalent in question, or (3) establish some other reason suggesting

9

why the patentee could not have been reasonably expected to have described the insubstantial substitute in question. *Festo VIII*, 535 U.S. at 740–41.

Whether the *Festo* bar applies, and whether the patentee has rebutted the presumption of a bar, is a matter of law for a judge to decide, rather than a jury. *Festo IX*, 344 F.3d at 1367–68. In making this determination, Courts "look to the specifics of the amendment and the rejection that provoked the amendment to determine whether estoppel precludes the particular doctrine of equivalents argument being made." *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010).

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 1: NON-INFRINGEMENT DUE TO THE APPLICATION OF THE *FESTO* BAR (DKT. NO. 165)

Defendants move for summary judgment of non-infringement on the ground that Howlink's sole reliance on a doctrine of equivalents infringement theory as to the "concatenation" term, recited in every asserted claim, is barred by prosecution history estoppel. Defendants' Motion, Dkt. No. 165 at 6–7. Defendants first assert the May 16 amendment replacing "combination" with "concatenation" was a narrowing amendment for purposes of patentability, therefore, triggering the *Festo* presumption. Second, Defendants contend that Howlink cannot rebut the *Festo* presumption based on the record clearly laid out in the prosecution history, and Howlink's admissions before the Court.

In response, Howlink challenges three aspects of the *Festo* presumption. First, Howlink argues that there is no *Festo* presumption because the May 16 amendment overcoming an obviousness rejection and resulting in an allowance was not a narrowing amendment. Second, Howlink asserts that there is no *Festo* presumption because there were other features distinguishing the amended claims from the Jamal reference—and so the amendment was not for

reasons of patentability. Finally, even if the *Festo* presumption applies, Howlink argues that the amendment is only tangentially related to the equivalent at issue.

### A. The May 16, 2012 Amendment was Narrowing

The first step is to determine whether the amendment narrowed the literal scope of the claim. *Festo IX*, 344 at 1367. The May 16 amendment was narrowing because "concatenation" is narrower than "combination."

The May 16 amendment presented new claim 28, in which the Applicant made the following changes to the Disputed Limitations relative to previously presented claim 8 (additions shown by underlining, and deletions shown by strikethrough):

> wherein ~~one~~ a first code group of the plurality of unique cell identification code groups is formed by a ~~combination~~ concatenation of a first cell identification code and a second cell identification code,
> wherein ~~another~~ a second code group of the plurality of unique cell identification code groups is formed by a ~~combination of a third~~ concatenation of the second cell identification code and ~~a fourth~~ the first cell identification code,

*See* Prosecution History (Amendment Response, June 20, 2011), Dkt. No. 165-5 at 25 (claim 8); *see also* Prosecution History (Amendment Response, May 16, 2012), Dkt. No. 165-6 at 34 (claim 28).

Howlink contends that Defendants' argument rests on the false premise that the Applicant narrowed claims by replacing the term "formed by a combination of" with the term "formed by a concatenation of." Howlink's Response, Dkt. No. 186 at 9. Howlink argues that the amendment actually broadened the claims "by removing a set of limitations requiring third and fourth cell identification codes." *Id.* at 11.

Howlink's argument is unpersuasive for at least any of the following independent reasons. First, the Supreme Court commands that equivalents be analyzed element by element.

11

*Warner-Jenkinson*, 520 U.S. at 29 ("the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."). Therefore, the relevant inquiry is confined to the Disputed Limitations containing "formed by a concatenation of," for which Howlink now relies on a doctrine of equivalents infringement theory.

Second, Howlink's attempt to argue that the May 16 amendment broadened the claims is belied by the claim language itself. Previous claim 8 recited "first," "second," "third," and "fourth" cell identification codes, each of which was entirely agnostic of sequence. *See* Prosecution History (Amendment Response, June 20, 2011), Dkt. No. 165-5 at 25 ("*one code group ... formed by a combination of a first* cell identification code *and a second* cell identification code" and "*another code group ... formed by a combination of a third* cell identification code and *a fourth* cell identification code.") (emphasis added). In fact, the only commonality required between the four groups was that "*a combination of the third* cell identification code *and* the *fourth* cell identification code *represents the same cell identification information as cell identification information represented by the combination* of the *first* cell identification code *and* the *second* cell identification code." *Id*. (Claim 28). Since the previous claims did not limit the third and fourth *cell identification codes* used to form "another code group," any two codes could be combined—allowing an infinite number of possible code groups to satisfy the previous claims.

As amended, the claims require first *and* second cell identification code groups "formed by concatenation of" the *same* two cell identification codes. Thus, the May 16 amendment not only significantly limited the number of possible code groups, but *narrowed* the claims to require *two particular sequences of the same two codes*. Prosecution History (RCE Amendment, May 16, 2012), Dkt. No. 165-6 at 41 (claim 28 reciting "a first code group … formed by a

concatenation of a first cell identification code and a second cell identification code" and "a second code group … formed by a concatenation of *the* second cell identification code and *the* first cell identification code") (emphasis added).

Third, the Applicant never challenged the Examiner's narrower definition of "concatenation," amended the claims to recite a broader term, or appealed the rejection. Rather, the Applicant modified its arguments directly acknowledging and acquiescing to the Examiner's understanding that "concatenation" means "serial concatenation." *See* Prosecution History, Dkt. No. 165-6 (Proposed Amendment Response, Apr. 17, 2012) at 24; *see id.* (RCE Amendment, May 16, 2012) at 41–42; *see also Festo VIII*, 535 U.S. at 723 ("While the patentee has the right to appeal, his decision to forego an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim").

Finally, at the *Markman* hearing, Howlink conceded that "formed by a concatenation of" is narrower than "formed by a combination of," and pictorially represented that narrower meaning. *Markman* Hrg. Tr. Feb. 23, 2023, Dkt. No. 137 at 5:15–24; *see also* Howlink's *Markman* slides, Dkt. No. 135 at 3. The record leaves no doubt that "concatenation" is narrower than "combination."

### B. The May 16, 2012 Amendment was for Reasons of Patentability

The second step is to determine whether the purpose of the narrowing amendment was for reasons of patentability. The May 16 amendment was directly related to patentability because the Applicant amended the claims to overcome an obviousness rejection, which resulted in the allowance of the claims and issuance of the '279 Patent.

The Examiner specifically rejected the claims as being obvious because Jamal teaches the limitations reciting unique cell identification code groups "formed by a combination" of the first

13

and second, and third and fourth cell identification codes, respectively. Prosecution History (Final Rejection, Jan. 17, 2012), Dkt. No. 165-6 at 6.

In response to the Examiner's obviousness rejection, the Applicant replaced the claims with new claims using "concatenation" instead of "combination." Prosecution History, Dkt. No. 165-6 (Amendment Response, Apr. 17, 2012) at 18 (Claim 28). The Applicant then copied the claim in the remarks section, bolded the Disputed Limitations containing "concatenation," and argued "Jamal merely discloses the combined code $C_{s/lci}$ where framing synchronization information and long code information (lci) are combined, but does not teach the concatenation of two cell identification codes, *i.e., the combination of two cell identification codes.*" *Id.* at 24–25 (emphasis added in italics) (underlining in original).

Howlink argues that including the phrase "i.e., the combination of two cell identification codes" in the April 17, 2012 response is conclusive evidence that the Applicant could not have relied on "concatenation" as the reason for overcoming the rejection. Howlink's Response, Dkt. No. at 9–10. According to Howlink, this demonstrates the Applicant knew the real difference was not *how* the codes were combined—the act of "concatenation" compared to "combination"—but rather *what* was being concatenated—the two cell identification codes. *Id.* at 10.

What Howlink ignores, however, is that the Examiner refused to enter the proposed amendments in part because "the term 'concatenation' does not have any support within the specification and cannot be seen or interpreted as mere combination when concatenation specifically means to connect or link in series or chain." Prosecution History (Advisory Action, Apr. 30, 2012), Dkt. No. 165-6 at 31. Thereafter on May 16, 2012, the Applicant filed a RCE with the same amended claims and arguments presented in the April 17 response, except that the

Applicant omitted the "i.e., the combination of two cell identification codes" following "<u>the concatenation of two cell identification codes</u>" in the remarks section. *Id.* (RCE Amendment, May 16, 2012) at 41–42. The Examiner then issued a notice of allowance and the '279 Patent issued. These events completely undermine Howlink's argument because the Examiner put the Applicant on explicit notice as to exact scope that was being surrendered by proceeding with "concatenation" instead of "combination," and consequently, accepting the Examiner's definition of "concatenation." To the extent that "concatenation" could conceivably be considered unnecessary to overcome the rejection based on Jamal, the Applicant could and should have changed that term back to "combination." The Applicant did not. The fact that there are additional reasons that *could* establish patentability does not otherwise change the fact that the Applicant proceeded with, and clearly emphasized the term "concatenation" to overcome the rejection. *See Eli Lilly*, 933 F.3d at 1332 (Fed. Cir. 2019) ("Amendments are not construed to cede only that which is necessary to overcome the prior art.") (citation omitted).

Thus, the prosecution history is convincing that the amendment was made to avoid prior art, which is the classic basis for the application of prosecution history estoppel. *Warner-Jenkinson*, 520 U.S. at 30–33 (1997). Accordingly, the *Festo* presumption is triggered such that all equivalents within the territory between the claim reciting "combination" and the amended claim reciting "concatenation" are surrendered. In other words, there is a presumption that the "parallel" or "interleaved" equivalents to "concatenation" have been surrendered.

### C. Howlink Failed to Rebut the *Festo* Presumption

After determining the narrowing amendment was for purposes of patentability, the final part of the analysis shifts to determining whether Howlink can successfully rebut the *Festo* presumption. While there are generally three ways to rebut the *Festo* presumption, Howlink only

15

argues that the May 16 amendment was tangentially related to the equivalent at issue.[5] Howlink's arguments fall short of meeting its burden.

Howlink first argues that the essence of the invention in the '279 Patent is "the formation of cell identification information through the use of two cell identification codes." *Id.* Howlink contends the Examiner rejected the claims because Jamal discloses "the combination of a single cell identification code (cell specific long code used for scrambling) with a different type of code (frame timing used for synchronization)," whereas the claims of the '279 Patent recite the combination of two cell identification codes that only provide cell identification information when concatenated. *Id*. at 12–13.

The Court is not persuaded by Howlink's attempt to reframe and reinterpret the clear prosecution history that occurred more than a decade ago. *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1382–83 (Fed. Cir. 2019) ("Indeed, we have held that '[t]he fact that the inventors may have thought after the fact that they could have relied on other distinctions in order to defend their claims is irrelevant' to discerning the objective reason for their amendment.") (quoting *Schwarz Pharma, Inc. v. Paddock Labs., Inc.*, 504 F.3d 1371, 1377 (Fed. Cir. 2007)). As previously discussed, in direct response to the Examiner's obviousness rejection, the Applicant replaced "combination" with "concatenation," bolded the Disputed Limitations, and then further emphasized that Jamal fails to teach "the concatenation of two cell identification codes." *Id.* (RCE Amendment, May 16, 2012) at 41–42 (underlining in original). And the

---

[5] Howlink argued at claim construction that "interleaving" was known at the time the application was filed, and would be included within the meaning of "concatenation," as claimed in the '279 Patent. Claim Construction Order, Dkt. No. 143 at 11–12, 15; *see also* Dr. Eslamimehr Decl., Dkt. No. 112-1 at ¶¶ 2, 3. Howlink also does not contest the foreseeability in its response. *See generally* Howlink's Response, Dkt. No. 186. Accordingly, Howlink has conceded the "interleaving" equivalent was foreseeable at the time of the application. Furthermore, Howlink's concession that "interleaving" was foreseeable during claim construction, and the Examiner's explicit definition of "concatenation" during examination leaves little room to establish some other reason suggesting why the patentee could not have been reasonably expected to have described the insubstantial substitute in question. *Festo VII*, 535 U.S. at 740–41.

Applicant did so *after* being put on notice by the Examiner as to the exact scope of what would be surrendered by reciting "concatenation" in the claims.

Second, Howlink argues that changing "combination" to "concatenation" would not distinguish the '279 Patent from Jamal because Jamal discloses concatenation. Howlink's Response, Dkt. No. 165 at 15–16 (citing to and characterizing FIG. 6B of Jamal as showing concatenation). The Applicant's own amendment and remarks contradict Howlink's assertion. Further, Howlink mischaracterizes the teachings of Jamal. The brief description of FIG. 6B states that it is an embodiment "of the present invention for including both frame timing and long code information in a combined code." Tellingly, no form of the term "concatenation" appears anywhere in Jamal.

Third, Howlink attempts to argue that its interpretation of the prosecution history is further supported by opinions from its infringement expert, Dr. Sharony, and its validity expert, Dr. Williams. Howlink's Response, Dkt. No. 165 at 14–15. "[W]hether the patentee has established a merely tangential reason for a narrowing amendment is for the court to determine from the prosecution history record *without the introduction of additional evidence, except, when necessary*, testimony from those skilled in the art as to the interpretation of that record." *Festo IX*, 344 F.3d at 1370 (emphasis added). The prosecution history is clear, and expert testimony is not necessary to understand it. Regardless, Howlink's expert testimony largely echoes arguments that have already been considered and rejected.

Finally, Howlink attempts to analogize this case to *Bio-rad Labs*, in which Defendant 10X Genomics Inc. argued it was entitled to judgment as a matter of law of non-infringement following a jury trial. Howlink's Response, Dkt. No. 165 at 17–18 (citing *Bio-Rad Labs, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1365 (Fed. Cir. 2020)). In *Bio-Rad Labs*, the equivalent to

"non-fluorinated microchannels" in question was microchannels containing negligible amounts of fluorine, which cannot react with a carrier fluid. 967 F.3d 1353, 1365 (Fed. Cir. 2020). The Federal Circuit held that the narrowing amendment to add the "non-fluorinated microchannels" limitation bore no more than a tangential relation to the equivalent in question because the inventors simultaneously added the limitation of a "fluorinated surfactant" to the carrier fluid. *Id.* Therefore, "the reason for the amendment was to distinguish microchannels that reacted with carrier fluids." *Id.*

In contrast, the objectively apparent reason for the narrowing amendment here was to distinguish cell identification code groups formed by unrestricted combinations of cell identification codes from those formed by specific concatenated sequences of cell identification codes. The Examiner rejected the claims based on "combination" and allowed the claims reciting "concatenation." There was no simultaneous addition of a limitation that could change the meaning of the Applicant's amendment. The combination of the Applicant's proposed amendment after final rejection and the Examiner's statement in the Advisory Action unequivocally establish the exact scope of what was being surrendered by the amendment. Nevertheless, the Applicant proceeded with the amendment and accompanying arguments to overcome the obviousness rejection over Jamal. The amendment from "combination" to "concatenation" clearly surrendered equivalents, such as "interleaving" that fall between "combination" and "concatenation." Howlink cannot now reclaim the "interleaving" or "parallel" equivalent to "concatenation" that the Applicant clearly surrendered during prosecution.

In sum, every asserted claim requires "formed by a concatenation of." Howlink only asserts that the Disputed Limitations are met under a doctrine of equivalents theory, and

prosecution history estoppel precludes Howlink's reliance on the equivalents sought. Therefore, viewing all facts and inferences in Howlink's favor, no reasonable jury could find that every limitation recited in the asserted claims is found in the accused device either literally or under the doctrine of equivalents. Accordingly, Defendants are entitled to judgment of non-infringement as a matter of law.

### IV.    CONCLUSION

For these reasons, **IT IS RECOMMENDED** the Motion for Summary Judgment of Non-infringement Due to Application of the *Festo* Bar (Dkt. No. 165) be **GRANTED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 30th day of May, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE